UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOE L. HOWARD,                          )
                                        )
            Movant,                     )
                                        )
    vs.                                 )      Case No. 4:06CV563  CDP
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            Respondent.                 )

## MEMORANDUM AND ORDER

Movant Joe L. Howard brings this case under 28 U.S.C. § 2255, seeking to

vacate, set aside, or correct his sentence.  Howard was sentenced to 188 months

imprisonment following his conviction by a jury of being a felon in possession of

a firearm in violation of 18 U.S.C. § 924(g).  Criminal Case No. 4:03CR273CDP.

His conviction and sentence were affirmed on appeal.  No. 04-3662 (8th Cir. June

10, 2005).

As grounds for relief under § 2255, Howard alleges that he received

ineffective assistance of counsel in numerous ways; that his Fourth, Fourteenth

and Sixth Amendment rights were violated in numerous ways (many of the same

ways he claims counsel was ineffective); and that the prosecutor withheld

exculpatory evidence and committed other acts of misconduct.

After careful review, I will deny the motion to vacate.  The records of the

case conclusively demonstrate that Howard is not entitled to relief, so no evidentiary hearing is required.

## Factual Background

As set out by the Court of Appeals, the evidence presented at trial showed the following:

On March 12, 2003, Officers Harry Howell and James Rush of the St. Louis Metropolitan Police Department responded to a 911 call that shots had been fired at an apartment building. When Officer Howell arrived there, the woman who placed the call said that a man, whom she recognized as a resident in the building, had fired a handgun outside in the rear courtyard, while shouting obscenities and appearing intoxicated. She directed Officer Howell to a white van that she believed belonged to the man. Checking the license plate, Officer Howell discovered the van was registered to Joe Howard, which matched the name on the mailbox for Apartment 3N.

Officer Howell went to Apartment 3N and knocked on the door, where he heard a television and smelled marijuana emanating from within the apartment. While Officer Howell was knocking on the door, a neighbor across the hall opened the door and told him that although she did not see anyone firing shots, she did see Howard return to his apartment with a gun shortly after shots were fired. Receiving no response to the knocks on the door of Howard's apartment, Officers Howell and Rush left the building. The next day, they obtained a search warrant based on the information obtained at the apartment building and records showing Howard was a felon.

On March 13, eight officers arrived at the building around 9:00 p.m. to execute the search warrant. Due to safety concerns, Officer Howell enlisted the assistance of the Mobile Reserve Unit, which helps execute search warrants in high-risk situations. Officer Mike Mathews, a Mobile Reserve member, knocked on the door to

Apartment 3N and announced "Police; search warrant." After knocking, Officer Mathews heard shuffling in the apartment, which led him to suspect that someone in the apartment might be arming himself. After no response – about five seconds later – officers broke down the door and arrested Howard. Officer Howell asked – after Miranda warnings – if Howard had any guns. Howard answered yes. Officer Howell then seized a .22 caliber Winchester rifle from the rear bedroom.

## Procedural Background

Howard was arrested on the indictment in this case on September 9, 2003, and initially the federal public defender was appointed to represent him. That counsel obtained discovery and filed pretrial motions, including a motion to suppress. When the federal defender's office determined that it had a conflict of interest, the court appointed substitute counsel, Alok A. Kale. Kale obtained the discovery materials from the original counsel and requested that the suppression hearing be continued so he could obtain the appearance of a witness who was then in state custody, Kimberly Irons (Irons was Howard's girlfriend and was present in the apartment at the time of the search).

Magistrate Judge Frederick R. Buckles held multiple hearings related to the motions. The government called as witnesses the police officer who signed the affidavit for the search warrant, as well as one additional officer who was present during the execution of the search. At one of the hearings defense counsel

indicated he wanted to call witness Kimberly Irons. Ms. Irons was present at the hearing with her state public defender, who told Judge Buckles that he had advised Ms. Irons to assert her Fifth Amendment right not to testify. He also advised that the state court was having Ms. Irons evaluated to see if she was competent. Judge Buckles had Ms. Irons sworn, she invoked her right not to testify, and she did not testify.

After the first two evidentiary hearings, Howard sent Judge Buckles two letters indicating he did not think his counsel had raised all the issues he should have regarding the searches, and asking to be moved to a different jail so he could do his own legal research. Judge Buckles then held a hearing to discuss the issues raised in the letters, and Howard indicated that he was concerned that his counsel had not challenged the warrants based on Rule 41, Fed. R. Crim. P. Judge Buckles explained to Howard that the federal rules of procedure did not govern the issuance of state search warrants. After further discussions, Judge Buckles gave the defense additional time to file more motions or briefs. Howard stated that this procedure was agreeable to him. Defense counsel then filed a statement indicating that he and Howard had decided not to file any additional materials. Howard did not file any more pro se materials.

Ultimately, Judge Buckles filed a Report and Recommendation, which

recommended that the motion to suppress be denied. Defense counsel objected, and after conducting *de novo* review, I adopted the recommendation and denied the motion to suppress.

The trial commenced on June 28, 2004, and concluded the next day, June 29, 2004, with a jury verdict of guilty. Defense counsel filed a motion for judgment of acquittal or in the alternative for a new trial, which I denied. The presentence report concluded that Howard was an Armed Career Criminal and subject to the fifteen-year mandatory minimum sentence under 18 U.S.C. § 924(e). Under the then-mandatory United States Sentencing Guidelines, his guidelines range was 188 to 235 months, and I sentenced him to 188 months.

Howard appealed his conviction and sentence. He argued, as he had before, that the evidence should have been suppressed because the police officers violated the knock and announce rule. The Court of Appeals rejected that argument, holding that even if there was a no-knock entry, it was justified by exigent circumstances. Howard challenged the testimony of the firearms examiner, and the Court rejected this challenge, finding that the testimony was admissible and relevant to prove that the firearm had traveled in interstate commerce. Finally, Howard challenged his sentence, claiming that one of his prior convictions – theft of a motor vehicle – was not a violent felony under 18 U.S.C. § 924(e). The Court

of Appeals rejected this argument, as dictated by circuit precedent at that time.

## **Grounds Raised**

Howard's allegations are interrelated and somewhat difficult to follow.  He has numerous complaints about the validity and execution of the search warrant, among other things.  In its response the government grouped several of the claims for argument purposes.  The government's recitation appropriately covers all the claims, but for clarity I have attempted to set out here the claims in the order used by Howard.

A.     *Ineffective Assistance of Counsel*:  For his first claim for relief, Howard argues that his trial counsel was ineffective in the following respects:

1.     Failing to properly prepare for trial, failing to interview prosecution witnesses, failing to replace discovery materials lost by the jail, and failing to obtain a police report that Howard asserts would contradict evidence in the reports that were obtained.

2.     Failing to challenge the search warrant as invalid because he "could not be charged with the Missouri Statute 571.070" because his last felony conviction was 18 years old, and failing to argue the "silver platter doctrine."

3.     Failing to prove that Howard's civil rights had been restored after his Missouri felony convictions, and failing to show that section "921(a)(20) exempts" him from prosecution.

4.     Failing to argue that his prior felony convictions could not qualify him as a "career offender" because he actually served less than a year in prison for each conviction.

5.      Failing to challenge the veracity of the search warrant and to show the lack of probable cause supporting the warrant; failing to argue that the judge issuing the warrant "acted as a rubber stamp" for the police.

6.      Failing to interview prosecution witnesses, failing to obtain lost discovery, failing to show that the arresting officers were lying about the execution of the warrant.

7.      Advising him not to testify that the police failed to knock and announce before breaking down the door and that the police did not have a warrant.

8.[1]    Failing to argue that the warrant was invalid because under Missouri law a felon can own a rifle "as long as the barrel is 16 inches" and because he was "18 years free of any felony conviction;" failing to argue the "silver platter doctrine."

9.      Failing to bring to the court's attention an inconsistency in the 911 recording and the officer's testimony.

B.      *Fourth, Fourteenth and Sixth Amendments:*  As support for his

second claim for relief – that his Fourth, Fourteenth and Sixth Amendment rights

were violated – Howard alleges:

1.      That the search warrant application contained false statements by or about the neighbors who reported the gunshots to police.

2.      That the warrant lacked probable cause.

3.      That he "could not be charged with Revised Statute Missouri 571.070" because his last felony conviction was 18 years old.

4.      That the reference to "rifle" in the affidavit proves that the warrant

---

[1]Claims 8 and 9 were raised in the Supplemental Motion [docket entry # 2].

was written after the arrest.

5.      That the officers did not have a search warrant at the time of the arrest.

6.      That the arresting officer was improperly allowed to give hearsay testimony.

7.      That the police did not knock or announce before forcing entry, and that the prosecutor "coached" one of the officers to testify falsely.

8.      That counsel was ineffective for all the reasons stated previously.

9.      That he was denied his right to confront the witness who initially reported someone firing shots.

C.      *Prosecutorial Misconduct:* Howard's third claim alleges prosecutorial

misconduct:

1.      The prosecutor told defense counsel he knew of no other police report than those that were produced.

2.      The prosecutor threatened his witness (presumably Kimberly Irons), causing her not to testify about the knock and announce violation.

3.      The prosecutor "rehearsed" a police officer into lying about the execution of the warrant.

4.      The prosecutor knew the search warrant was invalid, and demonstrated that by introducing the warrant into evidence at trial but not introducing the affidavit.

Howard filed several requests for discovery, which were actually requests

that the court provide him with the discovery materials that had been provided to

his counsel. The court sent these requests to his initial defense counsel, because the court does not have discovery materials. That lawyer sent what information was still in his file to Howard. After the government filed its response, Howard filed a traverse, which re-argues many of the same points, including that he could not be guilty because his civil rights were automatically restored when he was released from the Missouri Department of Corrections. He also argued that photos of a "no parking" sign would show that the warrant was invalid because it would have disproved the shots fired report from the neighbors. He then filed another "supplement" which argues that counsel was ineffective for failing to cross-examine the officers about an NCIC report showing he was not charged with firearms offenses in state court, which he claims proves the warrant was invalid. He filed motions for an evidentiary hearing, again arguing that a hearing would prove that the police officers lied and lacked probable cause.

## Discussion

### I.     Procedural Bar

A defendant may not use § 2255 to re-litigate claims that have already been considered on appeal, or to raise new claims that could have been raised on appeal but were not, absent a showing of cause and prejudice. *United States v. Wiley*, 245 F.3d 750 (8th Cir. 2001); *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir.

2000); *Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir. 1993); *see also Grady v. United States*, 44 Fed. Appx. 66 (8th Cir. 2002).

Under this rule, Howard's arguments about the motions to suppress evidence, the sufficiency of the search warrant, and the execution of the search are procedurally barred, and I cannot consider them.[2]  On direct appeal, Howard challenged the execution of the warrant, arguing that the officers failed to knock and announce their presence before breaking into his apartment.  The Court of Appeals rejected this argument, finding that exigent circumstances were sufficient to dispense with the knock-and-announce rules.  These circumstances included the belief that Howard possessed firearms in the apartment, that he had discharged firearms the night before while intoxicated and acting irrationally, that he had a criminal history that included convictions for dangerous crimes, that the officer believed it to be a high-risk warrant because of the presence of other residents in the building, and that the officer heard shuffling in the residence.  While Howard did not raise on appeal the challenges to the sufficiency and veracity of the warrant that he now seeks to raise, he could have done so, and he has not attempted to show cause or prejudice for failing to do this.  Howard filed a traverse and several

---

[2]The claims of ineffective assistance of counsel based on the failure to win the suppression motion are not procedurally barred, but, as discussed below, all fail on the merits.

other documents after the government raised this issue in its response, and he made no attempt to show cause and prejudice. All challenges to the search warrant and its execution are barred. (Subsections 1, 2, 3, 4, 5, and 7 of his second ground for relief, and subsections 3 and 4 of his third ground for relief). This bar extends to his claim that he should have been allowed to confront the witness who made the 911 call to police because that claim is also a challenge to the search. (Subsection 9 of the second ground for relief).

Similarly, Howard's somewhat confusing claim that he could not be charged with being a felon in possession under 18 U.S.C. § 924(g), either because he could not have been charged with a similar offense under Missouri law, or because 18 U.S.C. § 921(a)(20) somehow "exempts" him from prosecution, are procedurally barred. (Subsection 3 of the second claim for relief). These challenges could have been brought on direct appeal and were not. Additionally, they fail on the merits. Section 921(a)(20) simply defines felonies for the federal gun laws, and it contains no time limit: Howard's prior convictions met those definitions, no matter how old they were. His claim about Missouri law likewise provides no basis for relief, because even if Howard could not have been charged under Missouri law, he

could still be charged, as he was, under the federal statute.[3]

Similarly, Howard cannot complain of evidentiary rulings at trial that he did not challenge on appeal. His conclusory claim that the arresting officer was allowed to give hearsay testimony could have been raised on direct appeal but was not, and so is barred. (Subsection 6 of the second ground).

Thus, except for subsection 8, which simply reiterates Howard's claims of ineffective assistance of counsel, all of the allegations of Howard's second claim for relief, that "My 4th, 14th, and 6th amendment rights were grossly violated" are procedurally barred, and so I will only consider on the merits the claims of ineffective assistance of counsel or prosecutorial misconduct.[4]

## II.     Ineffective Assistance of Counsel

The Sixth Amendment establishes the right of the criminally accused to have the assistance of counsel in his defense. The United States Supreme Court has recognized that "the right to counsel is the right to the effective assistance of

---

[3]Section 571.070, Mo. Rev. Stat., has now been amended to be co-extensive with federal law, but at the time of Howard's commission of this crime, it prohibited possession of a firearm by a convicted felon only if the felony occurred "during the five-year period immediately preceding the date of such possession." This law, however, is no defense to the federal criminal statute under which Howard was convicted. To the extent Howard is arguing that the warrant is invalid because it referred to this statute, that also fails on the merits, because the warrant contained ample probable cause to believe that evidence of crimes, such as unlawful use of a weapon, would be found at his residence.

[4]The claims of prosecutorial misconduct are also probably procedurally barred, but I will discuss them on the merits because they are so clearly without basis.

counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order for a convicted defendant to prove that his counsel was ineffective, he must first show that counsel's performance was deficient. This showing of deficiency requires that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of an attorney's performance must be highly deferential, and the courts employ a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. A defendant must also show that he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Howard raises general and conclusory allegations that counsel failed to investigate and prepare for trial, but these non-specific references to counsel's "incompetence" or "half-baked ideas" are not a sufficient basis to grant relief or to hold a hearing. I will consider the specific allegations, but I cannot address such general and unsupported claims of incompetence or lack of preparation.

Howard's first subclaim of ineffective assistance is that counsel failed to

interview prosecution witnesses, replace discovery lost by the jail, and obtain what

Howard refers to as the initial police report.  The affidavits of the prosecutor and

of defense counsel establish that defense counsel obtained all discovery to which

he was entitled, including statements from all prosecution witnesses.  Counsel

cross-examined all government witnesses, and Howard has not shown how pretrial

interviews of those witnesses – assuming they would have given interviews –

would have made any difference in the cross-examination or the outcome of the

case.  Similarly, defense counsel's affidavit states that he provided defendant with

new copies of the discovery paperwork that had been lost by the jail, and counsel's

copies were never lost, so there can be no prejudice from this.  Finally, as set forth

in more detail in the later discussion of the third claim for relief, there is no reason

to believe that the alleged "initial" police report ever existed.  Counsel cannot be

ineffective for failing to obtain something that does not exist.

All or part of subsections 2, 5, 6, 7, 8 and 9 relate to the search warrant.

Contrary to Howard's assertions, counsel did challenge the sufficiency of the

probable cause supporting the warrant and the manner of its execution.  This is

amply demonstrated by the record of the case.  Counsel extensively cross-

examined the testifying officers at the suppression hearings and challenged the

veracity of the officers and the people who had provided information supporting

the warrant application.  He pointed out and argued inconsistencies between the warrant affidavit and other evidence.  When these arguments were not accepted by the Magistrate Judge, he filed detailed objections to the Report and Recommendation, challenging both the factual findings and the legal conclusions of the Magistrate Judge.  He again raised these issues at trial and in his post-trial motion.  Counsel's representation regarding the warrant was not deficient in any way.  He lost the arguments on the merits, but this was not because he failed to present all possible arguments.

Similarly, Howard's allegations contained within subclaims 3, 4 and 8 that counsel was ineffective for failing to challenge the indictment must also fail. Counsel cannot be considered ineffective for failing to raise meritless arguments. Liberally construing the § 2255 motion, Howard argues that counsel was ineffective for failing to argue that he could not be convicted of being a felon in possession of a firearm because: (1) Missouri law only prohibited felons from possessing firearms for a five-year period after conviction; (2) Missouri law did not prohibit felons from possessing firearms with barrel lengths over 16 inches; (3) Missouri law restores some civil rights (such as voting) automatically when a person is released from post-conviction supervision; and (4) he actually served less than one year in jail on the prior convictions, so they did not qualify as

felonies.  All of these arguments are frivolous.  It matters not what Missouri law

provides: the federal law under which Howard was convicted, 18 U.S.C. §

922(g)(1), makes it illegal for a person who has been convicted of a felony crime

under state or federal law to possess a firearm.  Under federal law the time

between the prior convictions and the possession is irrelevant.  A felony is any

crime that is *punishable* by imprisonment for a term exceeding one year. 18 U.S.C.

§ 921(a)(20).  The length of time a defendant actually serves in jail does not

matter.  And the restoration of voting rights that may occur automatically under

Missouri law when a person has completed incarceration and supervision does not

restore the right to possess a firearm.  Counsel was not ineffective for failing to

raise the clearly frivolous arguments on which Howard now relies.

Howard also argues that counsel was ineffective in advising him not to

testify that the police violated the knock and announce rule and did not have a

warrant when they searched his residence.  (Subsection 7).  I assume that Howard

is arguing that he should have testified at the suppression hearing, not at trial.[5]

---

[5]During trial, but outside the hearing of the jury, counsel stated that he had discussed the
right to testify with Howard and that Howard had decided not to testify.  I questioned Howard
and he confirmed to me that he understood his right to testify and that he had made the choice not
to testify.  Counsel's advice not to testify at trial was certainly reasonable under the facts of this
case, especially given that Howard told the police that he had the gun when they entered the
apartment, and given that he has never attempted to argue that he is actually innocent of
possessing the firearm.  It is hard to imagine how Howard would have improved his situation by
testifying and subjecting himself to cross-examination.

Howard has not shown that the advice not to testify was unreasonable, nor has he shown that his testimony would have changed the outcome of the suppression hearing.

Howard says he would have testified that the officers did not have a search warrant, but this testimony would have contradicted not only the testimony of two police officers, but also the search warrant itself, which was signed and dated by the judge before the search. Additionally, Howard could not have contradicted the testimony of the officers that they left a copy of the warrant with Ms. Irons, because he had been taken into custody by then. In one of his many filings in the § 2255 case, he says that the officers provided Irons with a "piece of paper that looked nothing like the search warrant," but his testimony to that effect would have been inadmissible hearsay, and, as stated above, Ms. Irons declined to testify.

With regard to Howard's claim that he should have testified that the knock and announce rule was not complied with, his testimony would not have made a difference in the outcome. As stated above, counsel raised this argument, but it was rejected by the Magistrate Judge, by me, and by the Court of Appeals. The Court of Appeals held that even if the officers had failed to knock, that decision was supported by exigent circumstances. Thus, Howard's testimony that they did not knock would not have changed anything.

Howard wrote Magistrate Judge Buckles two letters after the suppression hearing [docket entries ## 45, 47 in the criminal case] and he appeared before Judge Buckles at a special hearing to discuss the letters [docket entry # 48]. The recording of that hearing reveals that Judge Buckles addressed Howard directly and asked him what his concerns were, yet Howard did not tell Judge Buckles that he wanted to testify at the hearing. He mentioned Rule 41 of the Federal Rules, and agreed that he would discuss matters with his counsel and that counsel could notify the court if he wanted to file additional motions or have another hearing. Counsel notified the court that they had jointly decided not to do so, and Howard never indicated to Judge Buckles or to me that this was not correct.

Finally, Howard several times alleges that his counsel was ineffective for failing to argue the "silver platter doctrine." The idea that federal courts could receive evidence handed to them on a "silver platter" by state authorities who had seized it illegally was rejected long ago, in *Elkins v. United States*, 364 U.S. 206 (1960). In *Elkins* the Supreme Court held that evidence obtained by state authorities in violation of the Fourth Amendment could not be introduced at a federal trial. The court here at all levels – the Magistrate Judge, the District Judge, and the Court of Appeals – analyzed the search to determine whether the Fourth Amendment had been complied with, and at all levels determined that it had been.

There was no need to argue the "silver platter doctrine," because the search was not illegal under federal law. Counsel was not ineffective for failing to make this argument – the argument simply has no relevance to Howard's case.

Howard has not shown that his counsel's performance was defective in any way, nor has he shown that the outcome of the proceedings would have been different had counsel taken the steps that Howard now claims were required. I will deny the claim of ineffective assistance of counsel.

## III. Prosecutorial Misconduct

Claims of prosecutorial misconduct can be, and should be, raised on direct appeal. Even though these claims were obviously known to Howard at the time of his trial but were not raised on direct appeal, I will discuss them on the merits.

Howard claims that the prosecutor failed to disclose favorable evidence by withholding a police report. As discussed above, he also alleges that defense counsel was ineffective for not forcing the prosecution to disclose this report. But there is no evidence that this alleged report ever existed. Defense counsel's affidavit says he attempted to determine if any other reports existed and was told by government counsel and the law enforcement officers that all reports had been turned over. The federal defender who had the case initially turned over all his discovery, and said that there was no other report. Government counsel's affidavit

says that when defense counsel asked, he searched the various law enforcement agencies to determine if there were any other reports, and found none. There is no reference in any other document to an additional report. As discussed above, the jail apparently lost some of the discovery papers that counsel had given to Howard, but counsel's copies were never lost, and counsel gave Howard another copy of all the documents. Howard *now* claims that he saw this "initial" report in the discovery materials that were lost, and that the supposed report would prove that the police officers lied about the warrant's execution. But this is inconsistent with all the other evidence in the case, and Howard never raised this issue during the pendency of the case, despite his opportunity to tell me or Judge Buckles about it. A prosecutor cannot be faulted for failing to turn over a non-existent report, and a defense counsel cannot be faulted for failing to force the prosecution to turn over a non-existent report.

Howard's second subclaim of prosecutorial misconduct is that the prosecutor threatened a witness not to testify. He is apparently referring to Kimberly Irons, who was present with Howard when the search warrant was executed. Howard's motion says "She told me out of her own mouth that she had been threaten and was scared to testify." The motion does not have any affidavit

from Ms. Irons, nor does it indicate what she would have said if she had testified.[6] The prosecutor's affidavit establishes that he had no contact with this witness. As discussed above, the transcript of the suppression hearing [criminal case docket # 42, at p. 41-42], reflects that Ms. Irons, upon advice of her own state public defender, exercised her Fifth Amendment privilege against self-incrimination and refused to testify. This claim of prosecutorial misconduct is refuted by the record.

Howard also argues that the prosecutor engaged in misconduct because he supposedly "rehearsed officer Matthew into lying" and because he knew "that the search warrant affidavit is . . . based on lies." There is no evidence that the prosecutor suborned perjury, or that, in fact, any perjury occurred. Again, these claims appear to be Howard's speculation that something wrong must have been done because he was convicted.

Finally, Howard argues that the prosecutor's introduction of only the search warrant – and not the search warrant affidavit – into evidence at trial shows that the prosecutor knew the warrant was invalid. Search warrant affidavits are hearsay, and are not normally admissible at trial. A prosecutor is generally not *allowed* to introduce this evidence at trial, so it is nonsensical for Howard to argue

_____

[6]Even if she had testified that the police did not knock before entering the apartment – which some of Howard's arguments imply she would have said – this would have made no difference in the outcome, for the reasons discussed earlier in this opinon.

that this prosecutor's failure to do so is somehow wrongful.

## Evidentiary Hearing and Certificate of Appealability

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)). Because the records here conclusively show that Howard is not entitled to relief as a matter of law, I need not hold a hearing.

None of Movant's claims provide any basis for relief. I will therefore deny the motion. Under 28 U.S.C. § 2253, an appeal may not be taken to the Court of Appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. <u>Id.</u> at § 2253(c)(2). Howard has not made such a showing here, so I will not grant a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to vacate, set aside or correct sentence of Joe L. Howard [#1] is denied.

**IT IS FURTHER ORDERED** that Howard's motions for evidentiary hearing [#15, 16], for leave to conduct discovery [#11], and for judgment [#18] are denied.

**IT IS FURTHER ORDERED** that Howard's motion for extension of time to file traverse [#12] is granted, and I considered the traverse and his supplemental filing in making this decision.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as movant has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accord with this Memorandum and Order is entered this same date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 1st day of May, 2009.